UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT,

        Plaintiff,                       No. 10-11934

v.                                      District Judge Stephen J. Murphy, III
                                        Magistrate Judge R. Steven Whalen

SABENA WESTERN, ET AL.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion for Summary Judgment and to Dismiss [Doc. #30][1], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

### I.   FACTS

Plaintiff James Scott, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint, under 42 U.S.C. § 1983, on May 14, 2010, and an amended complaint on July 20, 2010. In his amended complaint [Doc. #25], which now controls, he makes the following allegations and claims.

(1) Defendants Shephard, Western and Putnam were involved in taking his typewriter ribbons, which he needed to prepare a Sixth Circuit brief that was due on February 28, 2007. Shephard took the typewriter ribbons on February 22, 2007, and Putnam did not return them until February 28, 2007, the date Plaintiff's brief was due. *Amended Complaint, Doc. #25*, ¶¶ 14-20. Plaintiff claims that he was thereby denied his First Amendment right to access the courts. In support of this claim, Plaintiff refers to his Exhibit No. 2, which is the Sixth Circuit briefing schedule in *Scott v. Burt*, No. 07-1097, setting a due date of February 28, 2007 for Plaintiff's brief.

(2) On February 22, 2007, after Plaintiff informed Shephard that he intended to write a grievance against Putnam and Western regarding the typewriter ribbons, "defendant Western moved

---

[1] This motion incorporates and supplements a previous motion for summary judgment filed on July 19, 2010 [Doc. #22].

plaintiff from a medical single man room in F-Unit to a two man regular room in H-Unit" in retaliation. *Id*. ¶ 21.

(3) On May 24, 2007, Defendants Young and Bain refused to notarize a legal affidavit for appointment of counsel. *Id*. ¶ ¶ 24-27. Plaintiff characterizes this claim as "willful denial of [a] procedural right."

(4) Plaintiff submitted a grievance against Defendant Young because she refused to notarize his affidavit. He alleges that Young retaliated against him by failing to timely process his order for personal hygiene items from the prison store, as a result of which he went without soap, deodorant, toothpaste and lotion for five weeks. *Id.* ¶ ¶ 30-34.

(5) Defendants Cummings and Barrett retaliated against him for writing grievances and filing lawsuits by arranging for him to be transferred the day before his wedding. *Id*. ¶ ¶ 35-42. Specifically, Cummings told him he was being transferred "because he filed a lawsuit against Sgt. Freeburn, a good man." *Id*. ¶ 38.

(6) Plaintiff alleges that Defendant Barrett called Defendant Clark to ask about Plaintiff's medical status, and was told that he had a "medical hold." Barrett told Plaintiff that he could not be moved until the hold was lifted. *Id*. ¶ 39. Clark changed his medical records from a code 004 to code 003, to falsely show that he was medically eligible for a transfer. *Id.* ¶ ¶ 40, 42. This was done in retaliation for Plaintiff filing grievances against Defendants Young and Bain. *Id*. ¶ 41.

(7) Defendants Scutt and McMillan denied him his "First Amendment right to litigate a grievance" by failing to properly process a grievance against Cummings. *Id*. ¶ ¶ 53-60.

(8) Defendants Western, Shephard and Putnam engaged in a civil conspiracy to prevent him from meeting the briefing schedule set by the Sixth Circuit. *Id.* ¶ 61.

The Defendants filed a motion for summary judgment based on the original complaint on July 19, 2010, accompanied by a number of exhibits [Doc. #22]. After Plaintiff filed his amended complaint, Magistrate Judge Hluchaniuk, to whom the case was then assigned, found that the amended complaint was filed as of right, and permitted the Defendants to supplement their motion for summary judgment. *See Order*, Doc. #26. The case was transferred to the docket of the

undersigned Magistrate Judge on May 10, 2011. The present motion [Doc. #30] will therefore be deemed to have supplemented the previous motion [Doc. #22], and the Court will consider Defendants' affidavits and other exhibits submitted with the previous motion.

Defendants have submitted as Exhibit A [Doc. #22] the Sixth Circuit docket sheet for *Scott v. Burt*, No. 07-1097, showing that Plaintiff's (Appellant's) brief was due on February 28, 2007, and that he filed his brief on February 20, 2007. On March 19, 2007, a panel of the Sixth Circuit dismissed the appeal for lack of jurisdiction.

Defendants' Exhibit B is the affidavit of Defendant Gena Young, who states that she did not deny Plaintiff notary service on May 27, 2007 or at any other time. She also states that she never refused to process Plaintiff's prison store order. If Plaintiff placed store orders in the officer station's drawer, as is the practice, they would have been taken to the store mailbox and processed. She states that Plaintiff's account was debited for store purchases on 6/13/07, 6/20/07, 6/22/07 and 6/27/07, and attaches Plaintiff's prisoner account statement showing those debits.

Exhibit F is the affidavit of Defendant Joseph Barrett, a Deputy Warden at the Cotton Correctional Facility. He states that the decision to transfer the Plaintiff was made by Correctional Facilities Administration, and that a Deputy Warden such as himself does not have the authority to approve a transfer. Nor was it his function to request medical clearances for prisoners. He states further that when Plaintiff was transferred to the Lakeland Correctional Facility, he was confined at the same security level as at the Cotton Facility.

On July 22, 2010, Defendants submitted the additional affidavits of Sabena Western (Exhibit E) and Tricia Clark (Exhibit G) [Doc. #24]. Ms. Western, a Resident Unit Manager at Cotton, states that she "does not have the authority to overturn a single man cell detail accommodation," and that if Plaintiff "was moved from a single man room, it would have been based on his not having a valid single-room detail and the need to accommodate incoming prisoners wit valid single cell details." Finally, she states that "if Plaintiff Scott had a legal deadline to file paperwork and he was unable to use his own typewriter, the unit typewriter would be available for him to use or he could use a typewriter in the Library."

Ms. Clark was a Health Information Manager at the Cotton Facility. She states in her affidavit that her responsibility in terms of updating medical codes is administrative or clerical, that is, she does not assess or change an inmate's medical status, but merely enters the codes as directed by medical personnel. Regarding Plaintiff's codes, she states that "the 004 code prisoner Scott is referencing is NOT a hold. Per the criteria, only 999 are holds and they have a temporary expiration date. The 004 code means a prisoner may be housed within the Jackson area (which includes Coldwater and Adrian since they are close enough for day transport for medical follow-up appointments at Duane Waters Health Center). A 003 code means a prisoner can be housed anywhere, including medical camps. A 002 code signifies housing at any facility, NO camps. Prisoner Scott was changed to a 002 status, not 003, as he claims." Finally, she states, "I never conspired with Deputy Barrett regarding the movement of prisoner Scott. I strictly update the CMIS screen when instructed to do so by a qualified medical service provider."

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the sufficiency of the complaint, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, ---U.S.---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief.

## B. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III. DISCUSSION

### A. First Amendment / Denial of Access to the Courts

Prison inmates have a constitutionally protected right of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). In *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Liberally construing Plaintiff's amended complaint, as we must in a *pro se* case, he alleges three instances of denial of access to the courts. First is the confiscation of his typewriter ribbons. In both his original and amended complaints, he clearly states that he required his typewriter in order to comply with the Sixth Circuit's briefing schedule (which Plaintiff himself submits as an exhibit) requiring him to file his appellate brief by February 28, 2007. However, the Sixth Circuit docket sheet shows that he was able to file his brief timely. Thus, there was no prejudice to his litigation.

In response to the Defendants' motion, Plaintiff for the first time alleges that he needed the typewriter not for the brief that was due on February 28th, but in order to address the fact that he did not obtain a Fed.R.Civ.P. 54(b) certification in the order he appealed from. Plaintiff states, "Realizing that his appeal did not contain a certification under Fed.R.Civ.P. 54(b) Plaintiff was preparing a motion on the collateral-order doctrine at the time the Defendants took his ribbons, and this was the actual injury Defendants caused Plaintiff." *Plaintiff's Response*, p.2 [Doc. #32]. In effect, Plaintiff is attempting to again amend his complaint by belatedly changing the basis for his claim in his response.

Further, the Sixth Circuit did not issue its Order dismissing the appeal for lack of jurisdiction, and referencing Rule 54(b), until March 10, 2007. The Order, which noted that the district court had granted in part and denied in part the defendant's motion for summary judgment, is appended to Plaintiff's response, and states, in pertinent part:

> "The order appealed disposed of fewer than all the claims or parties involved in this action and did not contain a Fed.R.Civ.P. 54(b) certification....The final decision of the district court has not been entered during the pendency of this appeal; therefore, appellate jurisdiction has not been invoked over this interlocutory appeal from the partial decision." (Citations omitted).

It is simply not plausible that the Plaintiff "realized" that there was no Rule 54(b) certification on February 22nd, but not on February 20th, when he actually filed his brief. It is more likely that he realized the Rule 54(b) problem after he saw the Sixth Circuit's March 10th order. But even if we accept that he sought to file a supplemental brief, there was still no prejudice to his litigation, since his "collateral order" argument would have been futile. Orders that lack a Rule 54(b) certification by the district court "are not reviewable under the collateral order doctrine since they

-6-

will be reviewable upon appeal following the final determination of the action." *In re Southern Indus. Banking Corp.*, 891 F.2d 292, *1 (Table) (6th Cir. 1989). *See also Haskell v. Washington Twp.*, 891 F.2d 132 (6th Cir. 1989) (rejecting argument that an order lacking a Rule 54(b) certification is appealable under the collateral order doctrine). Moreover, the collateral order doctrine is generally applied to those small classes of cases denying summary judgment on immunity or qualified immunity issues, *see Mitchell v. Forsyth*, 105 S.Ct. 2806 (1985), and is not affected by Rule 54(b). *Ramirez v. Webb*, 803 F.2d 721,*1-2 (Table) (6th Cir. 1986).

Finally, Defendant Western's affidavit shows that if Plaintiff's typewriter did not work, he was provided with the alternative of using the unit typewriter or a typewriter in the library.

Plaintiff's second claim is that Defendants refused to notarize a financial statement for him. According to Plaintiff, he intended to use that statement to convince the Court to appoint counsel to represent him, even though he had paid the filing fee and was not proceeding *in forma pauperis*. He argues that his case had merit, and "Plaintiff had a good chance of having the Court to appoint an attorney" when he filed his motion for appointment of counsel on May 25, 2007. *Plaintiff's Brief in Response,* at 3-4 [Doc. #32]. However, Magistrate Judge Mazoub's order denying counsel in that case (*Scott v. Burt*, No. 04-73508, Doc. #85) does not in any way reference Plaintiff's financial ability to obtain counsel, and that was not the basis of the denial. Rather, Judge Majzoub cited *Lavado v. Keohane*, 992 F.2d 601, 605-606 (6th Cir. 1993), in which the Sixth Circuit noted that "[a]ppointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances." She then found that "Plaintiff has adequately alleged the claims forming the basis of this § 1983 lawsuit indicating his basic understanding of the legal process." In other words, counsel was denied because there were no "exceptional circumstances" justifying the appointment of a lawyer, not because of Plaintiff's lack of funds. Indeed, it is generally (although not always) the case that a prison inmate–even one who has paid the filing fee–cannot afford a lawyer. Thus, there is no basis for Plaintiff's speculation that he would have had a "good chance" at having an attorney appointed if only his financial affidavit had been notarized, and he has not shown any prejudice to his case.

The Plaintiff's third access-to-the-courts claim involves the failure to process his grievances. However, even if true, this would not impede his ability to file a lawsuit, for two reasons. First, while the Prison Litigation Reform Act requires exhaustion of available administrative remedies, a prison's failure to follow its own procedures by delaying or withholding a grievance response relieves the inmate of the exhaustion requirement. "[T]he exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance." *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) (citing *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir.2002)). "To hold otherwise would permit prison officials 'to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Davis v. Caruso*, 2009 WL 878193, *10 (E.D.Mich. 2009)(quoting *Boyd,* 380 F.3d at 996).

Secondly, in *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that exhaustion is an affirmative defense that does not have to be pled by the prisoner. Thus, Plaintiff was not precluded from filing his lawsuit, and if Defendants raised exhaustion as a defense (and these Defendants have not done so), then his response would properly be that, based on *Boyd*, he was unable to exhaust because of the prison's decision to ignore his grievances.[2]

### B.    Retaliation

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

Plaintiff alleges that he was retaliated against for filing grievances and lawsuits. This is clearly constitutionally protected conduct, so he has met the first element of a retaliation claim.

---

[2] While *Jones v. Bock* overruled *Boyd* to the extent that *Boyd* relied on a "total exhaustion" rule, "it is still mandatory authority in regards to" situations where the prison fails to timely respond to a grievance. *Davis v. Caruso, supra* at *10.

As to the second prong, an "adverse action" is defined as one which "is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398. The question of whether an action is adverse is an objective one which does not depend upon how the particular plaintiff reacted. *Bell v. Johnson*, 308 F.3d at 606. However, the plaintiff must show more than a *de minimus* level of action by the defendant. *See Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)("There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned."); *Bell v. Johnson,* 175 F.3d at 606 ("[T]he purpose of the standard is to avoid trivializing the First Amendment by eliminating suits based upon insignificant acts of retaliation.").

The Plaintiff claims alleges adverse actions when he was transferred on February 22, 2007 from a single to a double cell, when he was moved to a different unit at the Cotton Facility on June 5, 2007, and when he was transferred to a different facility on September 26, 2007. However, he has not alleged that his security level was increased, or that he suffered any significant hardship as a result of these transfers. In *Thaddeus-X*, the Court noted that '[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse." *Id.*, 175 F.3d at 396. The conditions complained of and found to establish "adverse action" in *Thaddeus-X* included, in addition to harassment and physical threats, a transfer to the area of the prison used to house mentally disturbed inmates, which was alleged to have truly horrific conditions.[3] By contrast in this case, the Plaintiff's transfers, both within and from the Cotton Facility, were not accompanied by any comparably significant changes in his basic conditions of confinement. *See Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995) ("[T]he fact that a prisoner may not like a certain prison location does not automatically transform a valid transfer into a constitutional violation."). Concerning the transfer

---

[3] The Court listed the following allegations of unhealthy and unpleasant conditions in the unit to which the plaintiff was transferred: "...that the mentally ill prisoners throw human waste and urine at each other and at guards making X afraid to leave his cell, that the foul odor is constant and made X ill and unable to eat, that the other prisoners flood the gallery with water and bang their footlockers so loudly that X cannot sleep, that the adjacent prisoner urinates through the door of his cell and refuses to bathe or flush his toilet, and that this area of the prison is cleaned only on the rare occasions when 'deputies or a tour' are expected." *Id.*, 175 F.3d at 354.

from a single person cell to a two-person cell, the Plaintiff's own exhibit, attached to his original complaint, shows that he was assigned to a single cell in 2005, two years prior to the alleged retaliatory act of assigning him to a two-person cell, based on side-effects of his receiving radiation therapy. He was not assigned a single cell in perpetuity, and he has not shown that he was still getting radiation therapy in 2007 or that the single cell was still medically necessary. Nor has he shown that he was in any way denied appropriate medical care or subject to any other significant hardship as the result of his move.

Plaintiff also claims that Defendants Cummings and Barrett retaliated against him for filing a lawsuit against Sgt. Freeburn by having him transferred from the Scott Facility to the Lakeland Facility the day before his wedding. *Amended Complaint*, Doc. #25, ¶ ¶ 35-38, 68. If the Defendants' subjective motivation at the time was to disrupt the Plaintiff's wedding plans, then they did a pretty lousy thing. But the second prong of *Thaddeus-X*, which examines whether an adverse action was taken, is an objective inquiry. While Plaintiff's transfer to a nearby facility[4] no doubt resulted in some inconvenience, I am not prepared to say that it *objectively* qualifies as an adverse action that would deter a person of ordinary firmness from exercising his constitutional rights. The Defendants note in their response that the Plaintiff succeeded in getting married despite his transfer.

Thus, as to the transfers, Plaintiff's retaliation claims fail because there were no objectively determinable adverse actions.

Plaintiff also alleges that Defendant Young took adverse action when she refused to process his order for personal hygiene items. However, Young has submitted and affidavit, along with documentation that Plaintiff's prison account was debited for the store purchases within only two days or so after he submitted his orders, putting the lie to his claim that Young caused those orders to be delayed.

The third element of a retaliation claim is the showing of a causal connection between the protected conduct and the adverse action. *Thaddeus-X, supra*, 175 F.3d at 399. The subjective

---

[4] The Cotton Facility is in Jackson County. The Lakeland Facility is in neighboring Branch County.

motivation of the defendants is material to this element. The plaintiff has the burden of establishing that his protected conduct (in the case, the filing of grievances and a lawsuit) was a motivating factor behind any harm. Once the plaintiff meets this burden, the burden of production shifts to the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the defendant can then show that he would have taken the same action in the absence of protected activity, he is entitled to prevail on summary judgment. *Thaddeus-X*, at 399. The plaintiff does not have a heightened pleading requirement with regard to his initial showing of the defendant's motivation, but "it is obvious, of course, that bare allegations of malice would not suffice to establish a constitutional claim." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

Even if it were assumed that Plaintiff meets the "adverse action" prong of *Thaddeus-X*– and he does not– his complaint falters on the "causal connection" element. The affidavits of Defendants Western and Barrett indicate that these individuals did not have the authority to effect transfers, and Defendant has submitted nothing in response to rebut those statements. While Plaintiff claims in his own affidavit that Barrett requested the transfer, and refers to Exhibit 6 of his complaint, that exhibit is merely a security classification screen signed by Barrett, showing that Plaintiff is at a Level II (the second from lowest security level). It is not a request for a transfer, and does not rebut Barrett's otherwise unchallenged affidavit that he lacked authority to order a transfer. Moreover, Cummings' alleged statement, at ¶ 38 of the amended complaint, that Plaintiff was being transferred "because he filed a law suit against Sgt. Freeburn, a good man," does not in and of itself demonstrate retaliation.[5] Not only has Plaintiff failed to rebut, by affidavit or otherwise, Barretts' affidavit that

---

[5] There is some irony in Plaintiff's claim that he was retaliated against because of his lawsuit against Freeburn. In *Scott v. Freeburn*, 6th Cir. No. 07-1628, the Sixth Circuit affirmed the district court's dismissal of Plaintiff's § 1983 complaint in an order filed on November 6, 2007. (A copy of the decision is appended to Plaintiff's Response, Doc. #32]. Regarding Plaintiff's retaliation claim against Freeburn, the Court held, at p.3:

"Even if we assume that Scott did establish the first and second elements [of a retaliation claim] outlined above, we conclude that he has failed to establish the third. The complaint reflects that he has done nothing more than simply allege retaliation, which is insufficient to establish a causal connection."

Or, as Ronald Reagan famously said to Jimmy Carter during the 1980 presidential debates, "There you go again."

-11-

he had no authority to authorize a transfer, but he has presented nothing to show that Cummings had that authority. At best, the complaint alleges that Cummings made a statement of belief, not that he participated in the transfer. And as for Defendant Clark, her unrebutted affidavit shows that she only enters medical codes that she receives from medical practitioners, and that Plaintiff is simply mistaken as to what code he was given. Plaintiff's allegations against Clark are thus pure speculation. In addition, as the Defendants have pointed out, the Sixth Circuit in *Ward v. Dyke, supra*, held that a transfer is permissible to maintain prison order where an inmate has filed numerous grievances:

> "In the instant case, Ward was filing approximately five grievances or appeals (67 grievances and 48 appeals in five months) per week. Defendants claim, and Ward does not dispute, that the sheer volume of Ward's complaints interfered with prison administration and caused tension among staff. Dyke testified that he approves transfers to other facilities when tension between staff and a prisoner runs high, regardless of the source of the tension. The ability to transfer a prisoner who is interfering with prison administration and staff morale goes to the essence of prison management. 'Holding that arrangements like this [transfers to another prison] are within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges.'" (Quoting *Meachum v. Fano,* 427 U.S. 215, 228-29 (1976)).

Apart from the fact that neither Western, Barrett nor Cummings had any involvement in Plaintiff's transfers, any temporal proximity between his protected activity and the Defendants' alleged actions is insufficient to support an inference of retaliation. "Conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden,* 89 Fed. Appx. 579, 580 (6th Cir. 2004). Although in some circumstances, close temporal proximity between the protected conduct and adverse action may be " 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,' " *Muhammad v. Close,* 379 F.3d 413, 417-18 (6th Cir.2004) (quoting *DiCarlo v. Potter,* 358 F.3d 408, 422 (6th Cir.2004)), "it would only be sufficient if the evidence was significant enough." *Brandon v. Bergh,* 2010 WL 188731, *1 (W.D. Mich., 2010) (quoting *Muhammad,* 379 F.3d at 417-18).

Plaintiff's allegations of retaliation are not significant enough. They are highly speculative and conclusory, and smack of the *post hoc ergo propter hoc*[6] fallacy, where retaliatory motive is inferred merely from the sequence of events. However, the "fact that protected speech may precede an adverse [prison] decision alone does not establish causation," *O'Connor v. Chicago Transit Authority*, 985 F.2d 1362, 1370 (7th Cir. 1993), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Smith v. Halford*, 570 F.Supp. 1187, 1194-95 (D.Kan. 1983).

### C. Conspiracy

In *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987), the Court stated the well-settled rule "that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." There must be something more than a plaintiff's personal belief that he is the victim of retaliation or conspiracy. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). For the reasons discussed above, Plaintiff's claims of conspiracy in this case are conclusory and speculative.

In short, on these facts, no rational trier of fact could find for the Plaintiff on any of his claims, and summary judgment should therefore be granted to the Defendants.

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment and to Dismiss [Doc. #30, incorporating and superseding Doc. #22] be GRANTED, and that the claims against these Defendants be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435

---

[6] "After which, therefore because of which."

(1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. StevenWhalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: August 26, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on August 26, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 26, 2011: **James Scott.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217

-14-